```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                                 :
In re:                                                           :     Chapter 7
                                                                 :
ROGER ALLEN MASON,                                               :     Case No. 14-23058 (RDD)
                                                                 :
                              Debtor.                            :
                                                                 :
-----------------------------------------------------------------x
```

**MEMORANDUM OF DECISION ON DEBTOR'S MOTION TO AVOID OR
DISCHARGE JUDICIAL LIEN AND DISALLOW CLAIM OF
<u>KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.</u>**

Appearances:

Kantrowitz, Goldhamer & Graifman, P.C., *pro se*, by William T. Schiffman, Esq.

De Moya & Associates, P.C., for the debtor, by Desiree de Moya, Esq.

Hon. Robert D. Drain, United States Bankruptcy Judge

This contested matter, which has a fairly complicated procedural history, eventually reduces to a simple issue: was the obligation of the debtor herein (the "Debtor") to pay a portion of his ex-wife's legal fees to her matrimonial counsel, Kantrowitz, Goldhamer, & Graifman, P.C. ("KGG") satisfied when she paid a greater portion of her legal fees to KGG than the amount owed by the Debtor, but not all of the legal fees that she owed?[1]

---

[1] Currently this is a dispute only between the Debtor and KGG; the Debtor's ex-wife has not intervened. Moreover, it is possible that she will never seek to enforce her own judgment against the Debtor for counsel fees that overlaps KGG's judgment. That is because, according to the Debtor, a post-divorce stipulation between the two of them superseded the judgment of divorce that contained the Debtor's legal fee obligation to her. The stipulation itself may not go this far, however; at least it does not specifically address the Debtor's legal fee obligation to Ms. Mason. See Mason v. Mason, Index No. 11533/10 (GEL) (Sup. Ct., Rockland Cty. Jan. 1, 2014), a copy of which is attached as Exhibit B to the Debtor's Reply to KGG's Memorandum of Law, dated January 30, 2017 [Dkt. No. 29] ("Debtor's Reply"). On the other hand, the Debtor's Reply also attaches, as Exhibit A, an email from Ms. Mason to KGG in which she states that she believes that after her settlement payment to KGG the Debtor no longer owes anything for her counsel fees. In any event, as Judge Lane held in <u>Kantrowitz, Goldhamer & Graifman, P.C. v. Mason (In re Mason)</u>, 545 B.R. 464, 467-68 (Bankr. S.D.N.Y. 2016), even if the stipulation waived Ms. Mason's legal

1

This Memorandum of Decision states the Court's reasons for holding that KGG's claim against the Debtor will not be satisfied until the difference between Ms. Mason's debt to KGG and her settlement payment is paid. It is only upon such payment that KGG's judicial lien on the Debtor's property in Rockland County, New York should be discharged.

## Background

On December 17, 2013, KGG obtained a judgment against the Debtor for $52,526. Mason v. Mason, Index No. 2010-11533 [Dkt. No. 22, Ex. A], which it recorded on the same day with the Clerk of Rockland County, New York, where the Debtor resides. KGG was counsel to the Debtor's wife, Ms. Mason in a contested divorce action, and the judgment derived from a decision and order after trial in that action providing, in relevant part, that the Debtor must pay $50,000 of Ms. Mason's counsel fees, "[g]iven the extreme difficulties that plaintiff [Ms. Mason] encountered in this case, including defendant's failure to pay his Court-ordered obligations, resulting in multiple contempt applications and the eventual incarceration of defendant, as well as the 'relative merit of the parties' positions.'" Mason v. Mason, Decision and Order after Trial, Index. No. 11533/10 (LSJ), at 20 (Sup. Ct., Rockland Cty. May 21, 2013) (internal citations omitted) [Dkt. No. 23, Ex. B] (the "Decision and Order"). The state court later entered a judgment of divorce incorporating that decision, Mason v. Mason, Index No. 2010-11533 (GEL), at 5-6 (Sup. Ct., Rock. Cty. Oct. 11, 2013) [Dkt. No. 14, Ex. B], stating, in relevant part, "Defendant shall pay Plaintiff's counsel, [KGG], the sum of $50,000 on or before July 31, 2013, as and for counsel fees." (As discussed in greater detail below, under N.Y. Dom. Rel. Law § 237 (McKinney 2017), a court in a matrimonial action may direct the payment of some or all of a

---

fee claim, it would not be binding on KGG, which was not a party to it. Nothing herein prejudices any claims of Ms. Mason against the Debtor.

2

party's counsel fees to such party <u>or</u> to his or her attorney, <u>and</u> the attorney has the right to enforce such order separate and apart from the client.)

KGG's judgment remained unpaid when the Debtor filed this chapter 7 case on July 26, 2014.

Thereafter, KGG obtained a declaration from the Bankruptcy Court that its judgment was non-dischargeable pursuant to 11 U.S.C. § 523(a)(15).[2]  <u>Kantrowitz, Goldhamer & Graifman, P.C. v. Mason</u> (<u>In re Mason</u>), 545 B.R. at 467 (Bankr. S.D.N.Y. 2016) (Lane, B.J.).

The present matter came before the Court when the Debtor moved, by notice of presentment dated November 3, 2016, to avoid KGG's judicial lien on his residence. Debtor's section 522(f) Motion to Avoid Judgment Lien, dated October 26, 2016 [Dkt. No. 18] (the "Motion"). Although primarily focusing on avoiding KGG's lien pursuant to 11 U.S.C. § 522(f) as impairing the Debtor's homestead exemption, the Motion also stated that Ms. Mason had satisfied KGG's $98,576.62 separate judgment against her for legal fees pertaining to the divorce action, which, the Debtor argued, satisfied KGG's judgment against the him for a lesser included portion of such fees, requiring the lien to be discharged. <u>Id.</u> at ¶¶ 6, 8-9.

KGG's Objection to the Motion addressed the Debtor's section 522(f) argument, pointing out that 11 U.S.C. § 522(f)(1)(A) by its terms does not permit the avoidance of "a lien that secures a debt that is specified in section 523(a)(5)" of the Bankruptcy Code, 11 U.S.C. § 522(f)(1)(A), and contending that its $52,526 debt was non-dischargeable under section 523(a)(5).  Objection of [KGG] in Opposition to Notice of Presentment to Avoid Judgment Lien for Attorneys' Fees, dated November 30, 2016 [Dkt. No. 23].

---

[2] Bankruptcy Judge Lane further stated that "this debt appears likely to also satisfy the requirements of a domestic support obligation under section 523(a)(5) [of the Bankruptcy Code]," but did not rule that section 523(a)(5) applied in addition to Bankruptcy Code section 523(a)(15). <u>Id.</u> at 467.

3

However, perhaps because of the Motion's somewhat perfunctory discussion of the issue, KGG did not respond to the Debtor's alternative argument that Ms. Mason's satisfaction of KGG's judgment against her relieved him of his debt to KGG for a subset of her fees. Id.

At the hearing on the Motion, the Debtor's counsel stated that she was not going to argue that the debt underlying KGG's judicial lien was beyond the reach of 11 U.S.C. § 523(a)(5), and, therefore, that it was susceptible to avoidance under 11 U.S.C. § 522(f). Audio of Hearing Held on December 28, 2016 at 28:06. The Court agreed with this concession, stating that although Judge Lane's non-dischargeability decision did not definitively hold that KGG's debt was non-dischargeable under 11 U.S.C. § 523(a)(5) (basing the ruling instead on section 523(a)(15)), section 523(a)(5) would apply to the debt. Id. at 37:36. See, e.g., In re Rogowski, 462 B.R. 435, 443, 445-46 (Bankr. E.D.N.Y. 2011); Mordas v. Schenkein (In re Schenkein), 2010 Bankr. LEXIS 2700, at *13-15 (Bankr. S.D.N.Y. Aug. 8, 2010). While it is clear from the state court's Decision and Order that the court directed the Debtor to pay $50,000 of Ms. Mason's counsel fees based in part on the Debtor's conduct, the award does not appear to be a sanction or punitive in nature, but was, rather, as the court specified, "support" consistent with N.Y. Dom. Rel. Law § 237(a) and, therefore, nondischargeable under section 523(a)(5). Accordingly, based on the plain terms of 11 U.S.C. § 522(f)(1)(A), the Court denied the Motion's request to avoid the fixing of KGG's judicial lien on the Debtor's residence pursuant to that section.

The Debtor's counsel pressed the argument, however, that Ms. Mason's payment to KGG satisfied not only her own obligation but also KGG's judgment against the Debtor. KGG's counsel responded that based on the Stipulation of Settlement pursuant to which KGG and Ms. Mason settled her debt, Ms. Mason had not, in fact, paid her counsel fees in full and that, in settling her debt for a lesser sum, she and KGG had fully reserved KGG's right to collect its

4

judgment against the Debtor, subject to a single satisfaction. The Court directed the parties to present the facts in greater detail and brief the satisfaction issue, which they later did.

## Discussion

As noted, KGG obtained not only a $52,526 judgment against the Debtor for some of the counsel fees that Ms. Mason owed KGG (at the time, in excess of $91,000),[3] but also a March 8, 2016 judgment of $98,578.62 against Ms. Mason for all of its counsel fees in the divorce action, plus interest. Kantrowitz, Goldhamer & Graifman, P.C. v. Barbara Mason and Roger Mason, Index No. 2015-000348 (TEW) (Sup. Ct. Rock. Cty. 2016) [Dkt. No. 27, Ex. N].

KGG and Ms. Mason resolved her debt in a Stipulation of Settlement, dated August 18, 2016. Kantrowitz, Goldhamer & Graifman, P.C. v. Mason, Index. No. 032712/2016 (Sup. Ct. Rock. Cty. 2016) [Dkt. No. 25, Ex. E] (the "Settlement Stipulation"), which provided that, in return for Ms. Mason's payment of $90,000, KGG would provide a recordable satisfaction of its $98,578.62 judgment against her. Id. ¶¶ 1, 3. It is undisputed that Ms. Mason paid the $90,000 and that on September 12, 2016 KGG recorded the satisfaction of judgment contemplated by the Settlement Stipulation with the Rockland County Clerk.

The Settlement Stipulation also addressed KGG's judgment against the Debtor, stating that "the resolution of this Special Proceeding by this Stipulation of Settlement shall resolve all issues as and between KGG and [Ms. Mason], in regard to the Collection Case and the Collection Judgment, but shall not affect the rights of KGG to collect from [the Debtor] on the Judgment for Attorneys' Fees or the Bankruptcy Judgment any amounts owed by [the Debtor], pursuant to the separate judgment held by KGG against [the Debtor]." Id. at 3.

In addition, the Settlement Stipulation provides,

---

[3] Decision and Order at 19-20.

5

> [Ms. Mason] hereby acknowledges and agrees and shall be bound by this acknowledgment and agreement that this Stipulation of Settlement does not affect KGG's rights against [the Debtor] for any amount owed by [the Debtor] to KGG; in the event that either KGG or [Ms. Mason] shall collect any money on the said Judgment for Attorneys' Fees from [the Debtor], that the amount collected shall be first applied to the portion of the Collection Judgment not paid hereunder to KGG which amount is estimated to be $13,762.00 plus interest from August 15, 2016, and that the amount collected up to the full amount of the Collection Judgment shall be paid to KGG and any amount collected over the full amount of the Collection Judgment shall be paid to [Ms. Mason].

Id. ¶ 4.

In its post-hearing submissions, KGG makes two arguments why it should continue to have a claim, and, therefore, an enforceable judicial lien, against the Debtor for the difference between Ms. Mason's settlement payment and the amount of KGG's judgment against her.

First, it argues that by addressing KGG's judgment against the Debtor in the Settlement Stipulation as set forth above, Ms. Mason and KGG allocated Ms. Mason's $90,000 payment so as to preserve KGG's rights against the Debtor for the remaining, unpaid fees. KGG relies on precedent that

> Under New York law, when a debtor owes multiple obligations to a creditor, and the debtor makes a payment, the debtor has the initial right to specify which obligation he wishes the payment be applied to. However, absent a direction by the debtor, the creditor may apply a voluntary payment by the debtor as it sees fit and to its best advantage. Further, where a creditor applies a debtor's payments to outstanding debts, the creditor may then sue for the entire remaining amount on the current debt, even if the creditor could have mitigated its damages by allocating the debtor's payments to the current debt rather than the outstanding debt.

Idearc Media v. Alex Figliolia Contracting Corp., 2011 U.S. Dist. LEXIS 65667, at *3-4 (E.D.N.Y. June 16, 2011) (internal quotations and citations omitted); see also Elysian Fed. Savs. Bank v. Tednick Corp., 1994 U.S. Dist. LEXIS 14942, at *4-5 (N.D.N.Y. Oct. 14, 1994) ("Where a creditor holds more than one debt of a debtor, that debtor may direct the manner in which payment is applied. However, where there is no clear direction, the creditor may apply

payment in the manner it sees fit and to its best advantage."). "When neither the debtor nor the creditor makes such an application, the court will make it as equity and justice require, and, usually, the funds will be applied to the debts in the order of time in which they stand in the account." Beyer Bros. of Long Island Corp. v. Kowalevich, 89 A.D.2d 1005, 454 N.Y.S.2d 444, 445 (2d Dept. 1982) (internal citations omitted); see also Home & City Sav. Bank v. Bilinski, 177 A.D.2d 73, 76, 580 N.Y.S.2d 561, 563 (3d Dept. 1992); Dominion Fin. Corp. v. Haimil Realty Corp. (In re Haimil Realty Corp.), 546 B.R. 257, 270 (Bankr. S.D.N.Y. 2016). Where a debtor owes multiple obligations, "[t]he right of the debtor and creditor to make a particular allocation is not affected by third parties who may have an interest in the allocation of payments, such as sureties and guarantors – such third parties generally have no standing to insist on a particular allocation." MTB Bank v. Fed. Armored Exp., Inc., 949 F. Supp. 226, 229-30 (S.D.N.Y. 1999); see also Walther v. Bank of New York, 772 F. Supp. 754, 762 (S.D.N.Y. 1991) (creditor may apply debtor's payment to unguaranteed debt over guarantor's objection).

The foregoing authorities are inapplicable here, however, to KGG's claim as the Debtor's obligee, because Ms. Mason did not owe "multiple obligations" or "more than one debt" to KGG as the foregoing cases require; thus, the Settlement Stipulation's recitals regarding KGG's claim against the Debtor do not prevent the Debtor from being credited with Ms. Mason's payment.[4]

---

[4] It is worth noting, though, that the Settlement Stipulation's acknowledgement of the survival of KGG's claim against the Debtor for the difference between Ms. Mason's judgment and her settlement amount did sufficiently such claim against the Debtor under New York law notwithstanding KGG's release of Ms. Mason. See N.Y. Gen. Oblig. Law § 15-104 (McKinney 2017): "Subject to the provisions of section 15-103, the obligee's release or discharge of one or more several obligors, or of one or more of joint, or of joint and several obligors shall not discharge co-obligors, against whom the obligee in writing and as part of the same transaction as the release or discharge, expressly reserves his rights." See also In re Corman, 310 F.2d 932 (2d Cir. 1962).
    At least in this context, moreover, the Settlement Stipulation fixes the amount of KGG's claim in the Debtor's case notwithstanding Ivanhoe Bldg. & Loan Assoc. v. Orr, 295 U.S. 243, 245 (1935), which held that a claim in bankruptcy is not reduced by recovery from a third party obligor, subject to a single satisfaction. Here, KGG expressly limited its claim under applicable non-bankruptcy law, which defines its satisfaction. Travelers Cas. & Sur. Co. of Am. V. Pac. Gas. & Elec. Co., 549 U.S. 443 (2007). See In re Nat'l Energy & Gas Transmission Inc., 492

Because Ms. Mason and the Debtor were separately liable for the same counsel fees (albeit that the Debtor's liability was for only a portion of those fees), the dispute on KGG's claim as obligee against the Debtor is instead governed by N.Y. Gen. Oblig. Law § 15-103 (McKinney 2017).

That section states, "[t]he amount or value of any consideration received by the obligee from one or more of several obligors, or from one or more of joint, or of joint and several obligors, in whole or in partial satisfaction of their obligations, shall be credited to the extent of the amount received on the obligations of all co-obligors to whom the obligor or obligors giving the consideration did not stand in the relation of a surety." Id.  Thus, if Ms. Mason is not a surety for the Debtor, and in the absence of another countervailing statute, all of Ms. Mason's settlement payment must be credited against the Debtor's debt to KGG.  Because such payment exceeds his debt, the result of the credit would be the satisfaction of the Debtor's obligation to KGG, subject to Ms. Mason's reimbursement rights.[5]  See generally J.P. Endeavors v. Dushaj, 8 A.D.3d 440, 442, 778 N.Y.S.2d 531, 533 (2d Dept. 2004); Williams v. UFH Apts., Inc., 48 Fed. Appx 344, 347 (2d Cir. 2002); D.H. Blair & Co. v. Gottdiener, 2010 U.S. Dist. LEXIS 114257, at *31 (S.D.N.Y. Oct. 26, 2010).  The operation of section 15-103 is best summarized in cases applying, to the extent here relevant, the same type of crediting principle under N.Y. Gen. Oblig. Law § 15-108(a) (applicable, as discussed at FN 5, only to tort claims).  See, e.g., Williams v. Niske, 81 N.Y.2d 437, 440 (1993):

---

F.3d 297, 301 (4th Cir. 2007).  Cf. in re Del Biggio III, 496 B.R. 600, 604 (Bankr. N.D. Cal. 2012) (Ivanhoe controls over applicable non-bankruptcy law if creditor has not expressly limited claim against debtor).

[5] The Debtor cited N.Y. Gen. Oblig. Law 15-108(a) (McKinney 2017), instead of section 15-103, for the proposition that Ms. Mason's payment should be credited against the Debtor's obligation to KGG, but section 15-108(a) refers only to tortfeasors, and this language limits the statute's reach, unlike that of section 15-103, to the existence of some form of tort liability.  Bd. of Educ. V. Sargent, Webster, Crenshaw & Folley, 71 N.Y.2d 21, 28 (1987); Bankers Trust Co. v. Lee Keeling & Assocs., 20 F.3d 1092, 1099 (10th Cir. 1994).

8

> Where there is only one settling defendant whose equitable share of the damages has been determined . . . calculating the amount to be paid by nonsettling defendants is a simple task. If the settlement figure is below the settling defendant's equitable share, the nonsettling defendants pay only their equitable share of the verdict. If the settlement exceeds the settling defendant's equitable share, the nonsettling defendants pay only the difference between the settlement and the verdict, equitably apportioned among them. <u>If the settlement exceeds the verdict, the nonsettling defendants have no liability at all</u>.

(emphasis added).

As noted, however, N.Y. Gen. Oblig. Law § 15-103 by its terms does not permit an obligor to receive credit for a surety's payment to the obligee. <u>801 South Fulton Ave. Corp v. Radin</u>, 138 A.D.2d 5561, 526 N.Y.S.2d 143, 144 (2d Dept. 1988). New York law defines "surety" broadly, based on the facts, not the labels employed by the parties. <u>General Phoenix Corp. v. Cabot</u>, 300 N.Y. 87, 92 (1949). As stated by the New York Court of Appeals,

> A suretyship arrangement is, at its core, the confluence of three distinct, yet interrelated, obligations. These obligations are embodied in the tripartite relationship of principal obligor and obligee; obligee and secondary obligor; and secondary obligor and principal obligor. When a secondary obligor is bound to pay for the debt or answer for the default of the principal obligor to the obligee, the secondary obligor is said to have suretyship status. In other words, in transactions giving rise to suretyship status, the secondary obligor is answerable to the obligee in some way with respect to a duty, the cost of which, as between the principal obligor and the secondary obligor, ought to be borne by the principal obligor.

<u>Chemical Bank v. Meltzer</u>, 93 N.Y.2d 296, 302 (1999) (internal citations omitted); <u>see</u> <u>also</u> <u>In re Yale Express Sys., Inc.</u>, 362 F.2d 111, 114 (2d Cir. 1966) ("Suretyship is the relation which exists where one person has undertaken an obligation and another person is also under an obligation or other duty to the obligee, who is entitled to but one performance, and as between the two who are bound, one rather than the other should perform," or is the principal obligor) (internal quotation and citation omitted).[6] The essence of suretyship, therefore, is that, even if

---

[6] A surety relationship may be established by law as well as by contract. <u>Robbins Int'l, Inc. v. Robbins MBW Corp. (In re Robbins Int'l, Inc.)</u>, 275 B.R. 456, 468 (S.D.N.Y. 2002), <u>aff'd</u>, 56 Fed. Appx. 55 (2d Cir. 2003).

9

the obligee can look directly to the surety for satisfaction of its debt, as between the two obligors, one is the principal obligor that remains primarily liable; thus, in the normal course, following the surety's satisfaction of the obligee, the surety can look to the primary obligor in subrogation. Id.; Am. Sur. Co. v. Islip, 268 A.D. 92, 94, 48 N.Y.S.2d 749, 751 (2d Dept. 1944); Christoph Henkel, *Commercial Law: Personal Guarantees and Sureties between Commercial Law and Consumers in the United States*, 62 Am. J. Comp. L. 333, 348, 355 (Supplement 2014).

Here, Ms. Mason is a surety, by operation of law, with respect to the Debtor's $50,000 obligation, for which he is primarily responsible, though not for the rest of her debt to KGG. Under well-established precedent under N.Y. Dom. Rel. Law § 237, Ms. Mason can look to the Debtor for reimbursement of her payments to KGG, up to the amount of her judgment against him, not vice versa. See Ross v. Ross, 90 A.D.2d 541, 455 N.Y.S.2d 113, 115 (2d Dept. 1982); see also Silver v. Silver, 63 A.D.2d 1017, 406 N.Y.S.2d 352, 353 (2d Dept. 1978). Thus, the Debtor would not be credited for $50,000 of the $90,000 settlement payment made by Ms. Mason to KGG (although, of course, KGG cannot recover from the two of them more than Ms. Mason's total debt to it).

Indeed, it is Ms. Mason's (and here, as discussed below, KGG's) right to reimbursement which also supports KGG's second defense to the Motion, which is that deeming the Debtor's obligation satisfied by Ms. Mason's payment would contravene N.Y. Dom. Rel. Law § 237. That section provides that in "any action or proceeding . . . for a divorce . . . the court may direct either spouse . . . to pay such sum or sums of money directly to the attorney of the other spouse to enable that spouse to carry on or defend the action or proceeding as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties." N.Y. Dom. Rel. Law § 237. The statute's policy is "to eliminate the disparity between the

10

monied and the nonmonied spouse," and thereby even the playing field between spouses.

Frankel v. Frankel, 2 N.Y.3d 601, 607, 781 N.Y.S.2d 59, 61, 814 N.E.2d 37, 39 (2004); see also

Falcone v Falcone, 109 AD3d 787, 788, 971 N.Y.S.2d 132, 133 (2d Dept. 2013).

Although the statute does not expressly address situations like the one before the Court,

importantly, N.Y. Dom. Rel. Law § 237 has been applied to permit attorneys to be paid and sue

directly in their own name for such an award.  Frankel, 2 N.Y.3d at 606, 607.  Moreover, they

may do so even when discharged without cause by their client, id., or if the client purports to

settle his or her rights against the other spouse for counsel fees, at least without counsel's waiver

or involvement in the settlement.  Gregory v. Gregory, 109 A.D.3d 616, 617-18, 970 N.Y.S.2d

603, 604 (2d Dept. 2013); Schwartz v. Muir, 297 A.D.2d 743, 744, 747 N.Y.S.2d 551, 552 (2d

Dept. 2002); L.P. v. R.P., 47 Misc. 3d 1037, 1045-46, 5 N.Y.S.2d 683, 689-90 (Sup. Ct. West.

Cty. 2015); see also Tydings & Rosenbert, LLP v. Zorzit, 422 Md. 582, 593-95, 30 A.3d 984,

990-91 (2011) (same, under Maryland law).  Cf. Maher v. Maher, 47 Misc. 3d 228, 999

N.Y.S.2d 727 (Sup. Ct. Rock. Cty. 2014) (law firm has standing to enforce claim under section

237 in its own name even when it drafted settlement where client released claim).  Courts in New

York therefore apply the legal fiction that counsel such as KGG have the right to assert the

client's reimbursement claim under N.Y. Dom. Law § 237 unless they, in addition to the client,

have waived it.  These holdings reflect a policy to assure counsel compensation (and thus

encourage them to work) even if, after the fact, their client waives his or her right to payment

from the other spouse.

Significantly for our purposes, this right exists outside of N.Y. Gen. Oblig. Law § 15-

103, which pertains to crediting a co-obligor with payment made by the other obligor to the

obligee, and does not address that obligor's contribution or reimbursement claim against the co-

obligor. This distinction is illustrated in Boccia v. Murphy, 2 Misc. 3d 549, 770 N.Y.S.2d 592 (Sup. Ct. Queens Cty. 2002).  In that case, the court held that a settling party who had paid $120,000 of a joint and several $155,000 judgment in return for an assignment of the judgment could not seek to collect $100,000 on the judgment from a co-obligor; the settling party could, however, pursue a remedy for contribution.  Boccia, 770 N.Y.S.2d at 595-96.  Similarly, KGG can enforce Ms. Mason's reimbursement claim against the Debtor in KGG's name on the present facts, where it expressly reserved the right to do so in the Settlement Stipulation, subject, however, to the Settlement Stipulation's limitation that it can collect only the difference between KGG's judgment against Ms. Mason and the amount of her settlement payment to KGG.

## Conclusion

For the foregoing reasons, the Motion should be denied, and KGG's judicial lien should not be discharged until KGG is paid the difference between KGG's judgment against Ms. Mason and her settlement payment to KGG.  KGG is directed to submit an order to chambers consistent with this memorandum of decision.

Dated: White Plains, New York
       June 27, 2017

　　　　　　　　　　　　　　　　　　　　　　**/s/ Robert D. Drain**
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE